UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

---

William Kirkland,
        Plaintiff,

v.

John E. Potter,
Postmaster General, et. al.,
        Defendants.

Case No. C-1-03-373
(Watson, J.)
(Hogan, M.J.)

---

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on the Federal Defendant's Motion for Summary Judgment (Doc. 38) and Plaintiff's Response to Court's Show Cause Order and Motion to Compel Discovery (Doc. 44).

Plaintiff filed this action *pro se* on May 21, 2003 alleging employment discrimination in violation of Title VII, 42 U.S.C. 2000e, et seq. (Doc. 1). On April 29, 2005, Defendant, John E. Potter, Postmaster General of the United States Postal Service, filed a Motion for Summary Judgment pursuant to Federal Rules of Civil Procedure 56. (Doc. 38). Following two requests for extensions of time in which to respond to Defendant's motion, (*see* Docs. 40, 42), Plaintiff was denied a further extension and directed to file his response to Defendant's motion by July 10, 2005. (*See* Doc. 43). Thereafter, Plaintiff filed his Response to the Court's Show Cause Order and Motion to Compel Discovery (Doc. 44). Plaintiff's latest filing neither addresses the Court's Order to Show Cause nor Defendant's Motion for Summary Judgment. Instead, Plaintiff seeks an order compelling Defendant to respond to Plaintiff's Interrogatories and Request for Production of Documents.

**FACTUAL BACKGROUND**

Because Plaintiff failed to provide a memorandum in response to Defendant's

motion as ordered, Defendant's recitation of the factual background is undisputed. It is from Defendant's motion, as well as Plaintiff's Amended Complaint, that we recite the facts of this case. Plaintiff was employed, at all times relevant to this decision, by the United States Postal Service as a Mailhandler at the Cincinnati Bulk Mail Center. (Doc. 38, Ex. B at p. 5). At Plaintiff's administrative hearing, his supervisor Sharon Fawley[1] testified that Plaintiff submitted a request for absence requesting eight hours of annual leave for February 19, 2000. (Id. at Ex. B, p.8; Ex. C, hearing testimony at p. 79). Plaintiff, however, did not notify management of his absence the following day. Plaintiff, therefore, was charged with being absent without official leave ("AWOL") for February 20, 2000. (Id.). Thereafter, on February 21, 2000, Plaintiff reported for work late. Because he was late, Plaintiff was charged with another unscheduled absence. Plaintiff, however, requested that he be charged with only one unscheduled absence, which Fawley denied. Fawley then requested that Plaintiff complete three separate request forms to cover the three separate days. Plaintiff refused to sign the forms. Fawley then submitted the forms to the finance office with the notation on the bottom line reading "employee refused to sign." (Id.).

On or about June 15, 2000, Plaintiff reviewed his leave requests and became aware that Fawley had submitted them without his signature. (Doc. 38, Ex. C at 72, 73). At that time, Fawley asked Plaintiff whether he was going to be at work the next day to which Plaintiff responded with a request that he be permitted to tell her in the morning. (Id. at Ex. C, at pp. 33, 74). Fawley denied this request telling Plaintiff that she needed to know as she would need to schedule someone else to work in his place. (Id. at p. 33). Plaintiff became angry and loud stating to Fawley that he had reviewed his leave requests and did not like what Fawley had written on them. Plaintiff called Fawley a liar and began raising his voice. (Id. at pp. 15, 33, 34, 75). Despite being told by Fawley to stop yelling, Plaintiff's yelling intensified. (Id. at 11, 15). At this point, Fawley testified that she became frightened and called A/MDO Jack Everitt, a Caucasian male, for assistance. (Id. at p. 11). Everitt attempted to talk to Plaintiff, however Plaintiff became loud as they spoke. (Id. at p. 76). Everitt then told Plaintiff that he need not raise his voice, to which Plaintiff responded by yelling that he could raise his voice to anyone whom he chose and no one could stop him. Everitt then informed Plaintiff that if his behavior persisted, he would be removed from the building or disciplined. (Doc. 38, Ex. B, at p. 10). Everitt attempted to speak with Fawley to obtain her account of the situation. However, Plaintiff followed Everitt

---

[1] Sharon Fawley, a Caucasian female, had been Plaintiff's supervisor for 1 1/2 years at the time of the alleged discriminatory action. (Doc. 38, Ex. B, at p. 7).

2

attempting to interrupt the conversation. Plaintiff was told not to interrupt but instead started talking loudly. (Id. at pp. 10, 11). At this time, a coworker approached Fawley's desk to receive his work assignment. Upon seeing the coworker at Fawley's desk, Plaintiff began shouting that white people could come to the desk but black people could not. (Id.). Plaintiff remarked that "the white man can ask you questions, but the black man who you all are discussing can't participate in the conversation." (Doc. 38, Ex. C. at p. 78). Plaintiff then clocked out and left the area. (Id.).

On March 8, 2000, Plaintiff was charged with AWOL and was issued a seven-day time off suspension for his unscheduled absence on February 20, 2000. (Doc. 38, Ex. D, at pp. 23, 24). On June 26, 2000, Plaintiff was issued a seven-day no time off suspension for improper conduct for the June 15, 2000 incident with Fawley. (Id. at Ex. B, at pp. 9, 10; Ex. D, at pp. 30, 31). The discipline was issued by Fawley with Manager Distribution Operations ("MDO") Stephen Bunch concurring.

On December 6, 2000, Plaintiff filed his administrative EEO complaint alleging race, sex, and retaliation for the June 30, 2000 no time off suspension and for Fawley's "misrepresentation" on the leave request forms. (Doc. 38, Ex. D., at pp. 52, 56). The alleged discriminating officials were Fawley, Everitt, Bunch, and Kevin Sullivan. (Id. at p. 56). An evidentiary hearing was held on May 7, 2002 before Administrative Judge Elliott Porter. (Doc. 38, Ex. B). At the hearing, Plaintiff identified Pat Sandfoss (Caucasian male) and Chris Dixon (Caucasian male) as employees who were treated more favorably because they cursed around Fawley but were never disciplined. Plaintiff identified William Ashley as being treated more favorably because Ashley was not required to fill out three separate leave requests for a three day absence like he was required to do. (Id. at Ex. C, pp. 80, 81). By Order dated February 3, 2003, Administrative Judge Porter found no discrimination based on race, sex, or retaliation. (Id. at Ex. B). The Agency issued its Final Agency Decision on February 12, 2003 also finding no discrimination. (Id. at Ex. D). Plaintiff thereafter, filed his Complaint in the present civil action on May 21, 2003. (Doc. 1).

## OPINION

In the our Order dated June 30, 2005, the Court indicated that the basis for Plaintiff's request for an extension, a desire to file a motion to compel, was moot in light of the expiration of the discovery deadline. Plaintiff, nonetheless, requests that the Court order Defendant to provide more acceptable responses to his Interrogatories

and Requests for Production of Documents to enable him to respond to Defendant's Motion for Summary Judgment. The discovery deadline was extended, by joint request of the parties, until March 21, 2005. (*See* Doc. 28). On March 21, 2005, Plaintiff served his Interrogatories and Request for Production of Documents on Defendant. While his discovery request was certainly made within the deadline for discovery, it did not allow for the completion of such within the deadline established by the Court's scheduling order. Federal Rules of Civil Procedure 33 and 34 provide that the party upon whom the interrogatories and request for production of documents have been served shall serve responses, and objections if any, within thirty (30) days after the service of said requests. Fed. R. Civ. P. 33(b)(3); 34(b). Pursuant to the district court's pretrial procedure, " [d]iscovery shall be initiated so as to enable the opposing party to serve a response within the period allowed by the rules but in advance of the discovery deadline. *Discovery requested before the discovery cutoff deadline, but not scheduled for completion before the discovery closing date, does not comply*." (Watson, J., Trial Packet at p. 3)(emphasis added). As such, we find Plaintiff's discovery request to be untimely. For this reason, we find his Motion to Compel improper and deny it as such. *See Ginett v. Federal Express Corporation*, No. 97-5481, 1998 WL 777998 at *5 (6th Cir. Oct. 21, 1998).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law. In response to a summary judgment motion properly supported by evidence, the non-moving party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *Sixty Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987); *Harris v. Adams*, 873 F.2d 929, 931 (6th Cir. 1989). Conclusory allegations, however, are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.*, 898 F.2d 1155, 1162 (6th Cir. 1990). The non-moving party must designate those portions of the record with enough specificity that the Court can readily identify those facts upon which the non-moving party relies. *Karnes v. Runyon*, 912 F. Supp. 280, 283 (S.D. Ohio 1995)(Spiegel, J.). "[A]fter a motion for summary judgment has been filed, thereby testing the resisting party's evidence, a factual issue may not be created by filing an affidavit contradicting [one's own] earlier deposition testimony." *Davidson & Jones Dev. Co. v. Elmore Dev. Co.*, 921 F.2d 1343, 1352 (6th Cir. 1991).

The trial judge's function is not to weigh the evidence and determine the truth of the matter, but to determine whether there is a genuine factual issue for trial.

*Anderson*, 477 U.S. at 249-50. In so doing, the trial court does not have a duty to search the entire record to establish that there is no material issue of fact. *Karnes*, 912 F. Supp. at 283. *See also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989); *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988). The inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 249-50.

If, after an appropriate time for discovery, the opposing party is unable to demonstrate a *prima facie* case, summary judgment is warranted. *Street*, 886 F.2d at 1478 (citing *Celotex* and *Anderson*). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Plaintiff, having had sufficient opportunity to file a response to Defendant's Motion for Summary Judgment and having failed to do so, has provided this Court with no evidence of specific facts demonstrating a genuine issue for trial with respect to any of his alleged claims. Nonetheless, we will address Plaintiff's claims more specifically below.

## Discrimination

Plaintiff's claims are those of disparate treatment. In such a case, plaintiff has the burden of proving unlawful discrimination because of race or sex. Proof of discriminatory intent is crucial. *Rowe v. Cleveland Pneumatic Co., Numerical Control, Inc.*, 690 F.2d 88, 92 (6th Cir. 1982); *Chrisner v. Complete Auto Transit, Inc.*, 645 F.2d 1251, 1257 (6th Cir. 1981). Because of the difficulty of proving discriminatory motive, the Supreme Court has made available a special order of proof in employment discrimination cases, the initial stage of which is described as plaintiff's prima facie case. *Texas Depart. of Community Affairs v. Burdine*, 450 U.S. 248 (1981); *Askin v. Firestone Tire & Rubber Co.*, 600 F. Supp. 751, 753-54 (E.D. Ky. 1985), *aff'd without opinion*, 785 F.2d 307 (6th Cir. 1986).

Plaintiff may establish a prima facie case by showing that: (1) he belongs to a protected group; (2) he was subjected to an adverse employment action; (3) he was qualified for the job; and (4) that for the same or similar conduct, she was treated differently than a similarly situated non-protected individual. *Mitchell v. Toledo*

*Hosp.,* 964 F.2d 577, 582-83 (6th Cir. 1992). To be considered similarly situated, the employees with which Plaintiff seeks to compare himself must be "similarly situated in all relevant aspects." *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 583 (6th Cir. 1992). However, it is not required that the class of similarly situated employees be in identical employment positions. *Noland*, 869 F. Supp. 529, 531 (N.D. Ohio 1994); *see also Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344 (6th Cir. 1998). It is enough to show that other employees had substantially similar duties and responsibilities, reported to the same supervisor or supervisors, and engaged in comparably similar conduct. *Noland,* 869 F. Supp. at 531; *see also Mitchell*, 964 F.2d at 583 n.5.

The establishment of a prima facie case permits the "'inference of discrimination . . . because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Shah*, 816 F.2d at 268 (quoting *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Thus, by establishing a prima facie case, plaintiff creates a rebuttable presumption that defendant unlawfully discriminated against him. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). This presumption is a procedural device that temporarily ceases plaintiff's burden of producing evidence.

Plaintiff alleges that he was discriminated against based on his sex. Because all of the employees to whom he seeks to compare himself are men, he cannot establish a prima facie case of sex discrimination. *Mitchell,* 964 F.2d at 583.

Plaintiff also claims that he was discriminated against on the basis of race. Plaintiff seeks to compare himself to Dixon and Sandfoss, whom he contends were not disciplined for their use of curse words in the workplace. However, neither of these employees engaged in conduct of the type in which Plaintiff engaged. It is Fawley's undisputed testimony that Plaintiff's behavior caused her to become fearful enough that she called for assistance. Fawley testified that neither Dixon nor Sandfoss ever engaged in this type of behavior. Rather, their behavior consisted of using inappropriate language which stopped when told to do so by Fawley. Fawley further stated that these employees never cursed or yelled at her or caused her to feel threatened. (Doc. 38, Ex. C, at pp. 9-11, 21). Plaintiff's conduct does not compare. "Different disciplinary measures taken in response to different acts of insubordination by employees with different work records do not constitute disparate treatment for purpose of establishing a *prima facie* case." *Miller v. Yellow Freight Sys. Inc.,* 758 F. Supp. 1074, 1079 (W.D. Pa. 1991). While Dixon and Sandfoss's use of curse

6

words in the workplace may certainly be considered inappropriate, it does not rise to the level of Plaintiff's insubordination directed at his supervisor. As such, we find that Dixon and Sandfoss are not proper comparables to Plaintiff. *See Warfield v. Lebanon Correctional Inst.,* 181 F.3d 723, 730-31 (6th Cir. 1999); *Williams Cargill, Inc.,* 159 F. Supp.2d 984, 989-94 (S.D. Ohio 2001)(no similarly situated individuals where plaintiff fired for falsification of time records, sleeping on the job and insubordination and alleged comparable only caught sleeping on job); *Beene v. St. Vincent Mercy Medical Center*, 111 F.Supp. 931, 936-37 (N.D. Ohio 2000)(infraction giving rise to termination not of comparable seriousness); *McDaniel v. WalMart Stores, Inc.*, 94 F.Supp. 878, 881 (N.D. Ohio 2000)(Plaintiff's conduct more culpable than coworker).

Plaintiff also contends that he was treated less favorably than William Ashley when Plaintiff was required to submit three leave request forms while Ashley was not. However, Plaintiff has failed to provide any evidence that Ashley was similarly situated to Plaintiff, especially in terms of attendance and work history. There is no evidence that Ashley ever requested a three day absence under the same or similar circumstances as Plaintiff. While Plaintiff alleges that Ashley requested emergency leave on the same day as did Plaintiff, the phone log does not support such an allegation. (Doc. 38, Ex. D, at pp. 20-22). As such, we find William Ashley is not a proper comparable. For this reason, as well as those stated above, we find that Plaintiff has failed to establish a *prima facie* case of discrimination on the basis of either race or sex.

## Retaliation

Plaintiff also claims that he was retaliated against for his past EEO activity and leadership position in the African American Cultural Commission, a "human rights think tank." (Doc. 1). In such a case, Plaintiff has the burden of proving retaliation by a preponderance of the evidence. Proof of retaliatory motive is crucial. *See Rowe v. Cleveland Pneumatic Co.,* 690 F.2d 88, 92 (6th Cir. 1982); *Chrisner v. Complete Auto Transit, Inc.,*, 645 F.2d 1251, 1257 (6th Cir. 1981). Because of the difficulty of proving motive, the Supreme Court has made available a special order of proof in employment discrimination cases, the initial stage of which is described as plaintiff's prima facie case. *Askin v. Firestone Tire & Rubber Co.*, 600 F. Supp. 751, 753-54 (E.D. Ky. 1985) (citing *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981)), *aff'd without opinion*, 785 F.2d 307 (6th Cir. 1986).

7

In order to establish a prima facie case of retaliation under Title VII, Plaintiff must produce evidence that: 1) he engaged in activity protected by Title VII; 2) Defendant knew that Plaintiff had engaged in such activity; 3) subsequently, Defendant made an employment decision adversely affecting Plaintiff; and 4) there is a causal link between Plaintiff's protected activity and Defendant's adverse employment action. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987); *Jackson v. Pepsi-Cola, Dr. Pepper Bottling Co.*, 783 F.2d 50, 54 (6th Cir. 1986), *cert. denied*, 478 U.S. 1006 (1986). Protected activity consists of opposing any practice made unlawful by Title VII, making a charge, testifying, assisting, or participating in any manner in a Title VII investigation, proceeding or hearing. 42 U.S.C. § 2000e-3 (a).

Plaintiff may demonstrate the requisite causal connection by demonstrating disparate treatment or disparate punishment; i.e., that similarly situated employees were not punished for rule violations similar to those committed by plaintiff. *See Jackson v. RKO Bottlers of Toledo, Inc.*, 743 F.2d 370, 377 (6th Cir. 1984), *appeal after remand*, *Jackson v. Pepsi-Cola*, 783 F.2d 50 (6th Cir. 1986), *cert. denied*, 478 U.S. 1006 (1986). An inference of causal connection may also be drawn where defendant's adverse employment action closely followed plaintiff's protected activity. *Wrenn*, 808 F.2d at 501; *Womack v. Munson*, 619 F.2d 1292, 1296 & n.6 (8th Cir. 1980), *cert. denied*, 450 U.S. 979 (1981).

The establishment of a prima facie case permits the "inference of discrimination . . . because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors." *Furnco Construction Corp. v. Waters*, 438 U.S. 567, 577 (1978). Thus, by establishing a prima facie case, Plaintiff creates a rebuttable presumption that Defendant unlawfully discriminated against him. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). This presumption is a procedural device that temporarily ceases plaintiff's burden of producing evidence.

In the present case, Plaintiff has failed to demonstrate a causal connection between Plaintiff's discipline and his earlier protected activity. As stated above, *see supra,* at pp. 6-7, Plaintiff has failed to provide evidence of disparate treatment. Moreover, Plaintiff's last EEO activity occurred in October of 1995. (Doc. 38, Ex. B, at pp. 12, 13; Ex. D, at p.36). As such, there is not sufficient proximity to establish a causal connection. *See Cooper v. City of North Olmstead*, 795 F.2d 1265, 1272 (6th Cir. 1986)(showing that an adverse employment action occurred four months after

plaintiff filed an EEO complaint is insufficient to establish a prima facie case of retaliation); *Wheelwright v. Clairol, Inc.,* 770 F.Supp. 396, 401 (S.D. Ohio 1991)(discharge of employee four weeks after filing an EEO complaint insufficient to establish *prima facie* claim of retaliation). Additionally, Plaintiff has offered allegations that he was discriminated against due to his involvement in a "human rights think tank," but has provided no evidence supporting this claim. As such, Plaintiff has failed to establish that disciplinary action was taken against him because of such activity. Because Plaintiff has failed to provide evidence from which an inference can be made that the disciplinary actions would not have been taken had Plaintiff not engaged in protected activity, we find that Plaintiff has failed to establish a *prima facie* case of retaliation. *See EEOC v. Avery Dennison Corp.,* 104 F.3d 858, 861 (6th Cir. 1997); *Jackson v. RKO Bottlers*, 743 F.2d 370, 377 (6th Cir. 1984).

<u>Plaintiff's Claims Regarding 12/28/00 Removal Decision</u>

On January 21, 2004, Plaintiff filed a second civil action regarding a December 28, 2000, Removal Decision issued by Defendant. (*See Kirkland v. Potter*, Case No. 1:04cv038, Doc. 2). This case was dismissed voluntarily by Plaintiff subsequent to the filing of a Motion to Dismiss by Defendant. (Id., Doc. 20). Thereafter, on June 15, 2004, Plaintiff filed his Amended Complaint in the present action incorporating the allegations from his dismissed action. (Doc. 21).

Defendant argues that Plaintiff's claims are time-barred because Plaintiff failed to file said claims within the 90 day statute of limitations period as set forth in 42 U.S.C. § 2000e-16(c). Plaintiff opposed the removal decision administratively in Agency Case No. C-1-451-0118-01 and his appeal was denied for untimeliness in EEOC Appeal No. 01A34201. The Agency's decision became a final agency action on September 30, 2003. (Doc. 38, Ex. B, Dismissal of Appeal). Plaintiff was notified on his right to file a motion for reconsideration within 30 days of the date of receipt of the EEOC decision or to file a civil action within 90 days from the date of receipt of the decision. (Id.). There is no evidence that Plaintiff filed a request for reconsideration. (Doc. 38, Ex. H, Motion to Dismiss, Ex C, Affidavit of Donna Marshall). Instead, on January 21, 2004, Plaintiff filed his complaint in Case No. C-1:04cv38. This Complaint was clearly untimely pursuant to 42 U.S.C. §2000e-16(c). Likewise, Plaintiff's attempt to amend his Complaint in the present action in an effort to relate back to the original Complaint fails.

The relation back issue is governed by Fed. R. Civ. P. 15(c), which provides in

pertinent part:

>   (c) Relation Back of Amendments. An amendment of a pleading relates back to the date of the original pleading when
>
>   (1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or
>
>   (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
>   (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Neither 15(c)(2) or (c)(3) apply as Plaintiff seeks to add a new claim, not a new party, and the claim does not arise out of the conduct set forth in the original complaint. The only basis for relation back would be under 15(c)(1) which provides for relation back if the law which provides the statute of limitations, namely 42 U.S.C. 2000e-16(c), so permits. 42 U.S.C. 2000e-16(c) provides no specific provision for relation back. Therefore, the claims relating to the December 28, 2000 removal decision are barred by the applicable statute of limitations and should be dismissed.

<u>Plaintiff's Failure to Exhaust Administrative Remedies</u>

Plaintiff's Amended Complaint also sets forth allegations concerning incidences occurring between October, 2001 and March, 2004. (Doc. 21, ¶¶32-44).

Prior to bringing a Title VII suit in a federal district court, the aggrieved party must timely file charges of discrimination with the EEOC and must receive and act upon the EEOC's right-to-sue letter. 42 U.S.C. §§ 2000e-5(e)-(f)(1); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 798 (1973). A plaintiff who fails to pursue or exhaust his administrative remedies is barred from bringing a Title VII suit in federal

court. *Jones v. Cassens Transport*, 748 F.2d 1083, 1086 (6th Cir. 1984); *Romain v. Kurek*, 836 F.2d 241, 245 (6th Cir. 1987); *Smith v. Kaldor*, 869 F.2d 999, 1008 (6th Cir. 1989); *see also Knafel v. Pepsi-Cola Bottlers*, 899 F.2d 1473, 1480-81 (6th Cir. 1990).

The record contains no indication that Plaintiff ever filed a claim with the EEOC regarding incidents occurring between October, 2001 and March, 2004. Rather, Plaintiff first made this Title VII claim in his Amended Complaint filed in this Court on June 15, 2004. (Doc. 21). Because Plaintiff has failed to comply with the administrative filing prerequisite, this Court has no jurisdiction over these claims and said claims should be dismissed.

## Plaintiff's First Amendment Claim

Finally, Plaintiff alleges that he was discriminated and retaliated against due to his leadership position in the African American Cultural Commission. (Doc. 21, ¶¶51-53). However, Plaintiff has failed to come forth in response to Defendant's motion with any evidence supporting this claim. Plaintiff fails to set forth even the most basic factual foundation for such a claim.

In order to maintain a First Amendment retaliation claim under § 1983, Plaintiff must demonstrate that (1) he engaged in activity protected by the First Amendment; (2) the Defendant's adverse action caused the Plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and (3) the adverse action was motivated at least in part as a response to Plaintiff's exercise of his constitutional rights. *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). *See also Laird v. Tatum*, 408 U.S. 1, 11 (1972). While proof of a subjective "chill" on Plaintiff's First Amendment rights is insufficient to support a retaliation claim, Plaintiff need not demonstrate a constitutional injury in order to succeed on his claim. See *McBride v. Village of Michiana*, 30 F.3d 133 (unpubl.), 1994 WL 396143 at *3-4 (6th Cir. July 28, 1994), and cases cited therein. In other words, Plaintiff need not demonstrate that Defendant's conduct greatly impacted or completely deprived him of his First Amendment rights. *Mendocino Environmental Center v. Mendocino County*, 14 F.3d 457, 464 (9th Cir. 994); *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)("there is no justification for harassing people for exercising their constitutional rights"). Rather, "[w]here, as here, the motive of the governmental actor[s] is pertinent to the inquiry, the claimant[s], if engaged in constitutionally protected activity during the relevant time period, need only show that the act of retaliation

consisted of the deprivation of a nontrivial commodity." *McBride*, 1994 WL 396143, at *4. Plaintiff, therefore, must establish that he has sustained or is in danger of sustaining a direct injury such as injury to employment or reputation, embarrassment, humiliation, or emotional distress. *Bloch,* 156 F.3d at 679-80. *See also Laird*, 408 U.S. at 13-14; *Alliance to End Repression v. City of Chicago*, 627 F. Supp. 1044, 1048 (N.D. Ill. 1985)). To determine whether Defendant's conduct had an adverse effect on Plaintiff's constitutional rights, the test is whether Defendant's challenged activities are likely to chill Plaintiff's exercise of constitutionally protected speech, association, and petitioning. *McBride*, 1994 WL 396143 at * 4.

Because Plaintiff has completely failed to file a response to Defendant's motion, Plaintiff has failed to establish a genuine issue of material fact for trial. The factual allegations in Plaintiff's Amended Complaint are woefully insufficient to support a claim under the First Amendment. For this reason, we find that summary judgment should be granted with respect to Plaintiff's First Amendment claim.

## IT IS THEREFORE RECOMMENDED THAT:

1) Defendant's Motion for Summary Judgment (Doc. 38) be GRANTED consistent with the decision herein.

2) Plaintiff's Amended Complaint be TERMINATED on the Court's docket.

Date: 9/2/2005         s/Timothy S Hogan
                       Timothy S. Hogan
                       United States Magistrate Judge

# NOTICE

Attached hereto is the Report and Recommended decision of The Honorable Timothy S. Hogan, United States Magistrate Judge, which was filed on 9/6/2005. Any party may object to the Magistrate's findings, recommendations and report within ten (10) days after being served with a copy thereof or further appeal is waived. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also* Fed. R. Civ. P. 72(b). Such parties shall file with the Clerk of Court, and serve on all Parties, the Judge and the Magistrate, a written Motion to Review which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made along with a memorandum of law setting forth the basis for such objections. (Such parties shall file with the Clerk a transcript of the specific portions of any evidentiary proceedings to which an objection is made).

In the event a party files a Motion to Review the Magistrate's Findings, Recommendations and Report, all other parties shall respond to said Motion to Review within ten (10) days after being served a copy thereof. *See* Fed. R. Civ. P. 72(b).

J:\SMITHLE\SUMJUDG\kirkland.msj.wpd

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY | |
|---|---|---|
| ■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ | ☐ Agent<br>☐ Addressee |
| | B. Received by ( Printed Name) | C. Date of Delivery |
| 1. Article Addressed to:<br><br>William NMI Kirkland<br>2720 Price #1<br>Cinti, OH 45204 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below: ☐ No | |
| | 3. Service Type<br>☒ Certified Mail ☐ Express Mail<br>☐ Registered ☐ Return Receipt for Merchandise<br>☐ Insured Mail ☐ C.O.D. | |
| | 4. Restricted Delivery? (Extra Fee) ☐ Yes | |
| 2. Article Number<br>(Transfer from service label) | 7004 0750 0003 9306 0851 | |

PS Form 3811, February 2004    Domestic Return Receipt    102595-02-M-1540